UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                         Case No. 2:18-cr-195(3)
                            Judge Sarah D. Morrison

JOSE LUIS DELEON BALTAZAR,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court on Mr. DeLeon-Baltazar's *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255. After conducting an initial screen of the Motion pursuant to Rule 4(b) of The Rules Governing Section 2255 Proceedings of the United States District Courts, the Court ordered that the Government file an answer, move, or otherwise respond to the Motion. (Rule 4 Screen, ECF No. 206.) The Government complied by filing a response in opposition to the Motion. (ECF No. 202.) The time for filing a reply brief in support of the Motion has passed, with none filed. (ECF No. 225 (reply due October 2, 2023).)

For the reasons set forth below, the Motion is **DENIED**.

**I.    BACKGROUND**

In late 2018, Defendant was arrested in Bogota, Columbia pursuant to a federal indictment charging him and his co-conspirators with conspiracy to distribute cocaine into the United States in violation of 21 U.S.C. § 959(a). While

awaiting extradition to the United States, Mr. DeLeon-Baltazar confessed to his role in the conspiracy. (Sealed Report of Interview, ECF No. 224.)

On the same day that Defendant entered his initial appearance in this case, Attorney Diane Menashe was appointed as his attorney and, later, Attorneys Nicole Rene Woods and Madison Troyer filed appearances on his behalf (altogether "Defense Counsel"). Shortly after their appointment, Defense Counsel engaged in plea negotiations with the Government. Initially, plea negotiations yielded an offer with the following terms: (1) a base offense level of 38 (based on 450 kilograms or more of cocaine), (2) no role enhancement or role reduction, (4) the option for the Defendant to request a safety valve reduction, and (5) an understanding that the Defendant could be eligible for a three-level reduction for acceptance of responsibility. Potential sentencing outcomes under the proposed terms included 135 to 168 months of incarceration with the safety valve and 168 to 210 months without the safety valve. (*Lafler* Hearing Transcript; ECF No. 211, 9:10–23.) Although he could face a sentence of 235 to 293 months if convicted at trial, Defendant initially refused this offer. He later wrote a letter requesting, among other things, the opportunity to accept the Government's offer of 11 years (132 months). (Sealed Letter, ECF No. 179.)

Following renewed plea negotiations, the Defendant accepted an 11(c)(1)(C) plea agreement (Signed Plea Agreement, ECF No. 180). Under the terms of the agreement, the Defendant pled guilty to Count 1 of the Superseding Indictment and the parties made a binding recommendation to the Court of 120 to 168 months of

2

imprisonment. The plea agreement also included the following terms: (1) the Defendant was responsible for 450 kilograms or more of cocaine (base offense level 38); (2) the Defendant was not a leader or organizer in the conspiracy, (3) nor was he a minor participant; (4) Defendant could argue for application of the safety valve and (5) for a three-level reduction for acceptance or responsibility. In addition, the parties agreed that the probation office was not limited in finding that certain guidelines sections applied.

After Defendant entered his guilty plea, the probation office prepared a presentence investigation report with the following findings: the offense involved 880 kilograms of cocaine, resulting in a base offense level of 38; Defendant was eligible for a 2-level safety valve reduction and a 3-level acceptance of responsibility reduction but no role reduction or enhancement applied; the final total offense level was 33; Defendant had a criminal history category of I and the applicable guidelines range was 135 to 168 months of incarceration. (Presentence Investigation Report, ECF No. 185.) Neither side objected to presentence investigation report.

At the sentencing hearing, the Court accepted the guidelines range calculated by the probation office. (Sentencing Hearing Transcript, ECF No. 212, 5:21–6:5.) The Government requested a sentence of 150 months and Defense Counsel requested 120 months or, in the alternative, recommended that the Court split the difference for a sentence of 135 months. (*Id.* at 6:10–13, 8:7–13). After hearing arguments from both sides and the Defendant's allocution, the Court recognized that the offense was "as serious as it gets" and that the appropriate sentence was

one that would deter others from similar activities. (*Id*. at 16:23–17:1). Ultimately, the Court sentenced Mr. DeLeon-Baltazar to 140 months of incarceration and declined to order forfeiture. (Judgment Entry, ECF No. 193; Sealed Statement of Reasons, ECF No. 194.)

## II.   STANDARD OF REVIEW

A prisoner may move to vacate his sentence under 28 U.S.C. § 2255 if he can demonstrate that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it "is otherwise subject to collateral attack." 28 U.S.C. § 2255. "Section 2255 does not provide relief for just any alleged error." *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019). To prevail on a § 2255 motion alleging constitutional error, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Although non-constitutional errors are generally outside the scope of § 2255 relief, *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a petitioner can prevail on a § 2255 motion alleging non-constitutional error by showing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

When a habeas petitioner presents a credible factual dispute, "the habeas court must hold an evidentiary hearing." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (citing *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). However, no hearing is required if "the record conclusively shows that the petitioner is not entitled to relief." *Id.* There is no credible claim for relief where the petitioner's allegations "'are contradicted by the record, inherently incredible, or conclusions rather than statements of facts. . ..'" *Id.* (citing *Arrendodo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The allegations of a *pro se* habeas petition are entitled to a liberal construction. *Franklin v. Rose*, 765 F.2d 82 (6th Cir. 1985).

Upon review of the arguments raised and evidence submitted, the Court finds that Mr. DeLeon-Baltazar does not present a credible factual dispute and therefore no evidentiary hearing is needed.

### III.  DISCUSSION

Mr. DeLeon-Baltazar raises four grounds for relief, each alleges ineffective assistance of trial counsel at different stages of the proceedings. First, he argues that Defense Counsel failed to challenge the Government's jurisdiction or the strength of its evidence against him. Second, he argues that his attorneys permitted him to accept a guilty plea that was not knowing or voluntary. Third, he argues that Defense Counsel, either during plea negotiations or at sentencing, failed to argue for application of the safety-valve provision under United States Sentencing Guideline ("U.S.S.G.") § 5C1.2 and that he was a minimal or minor participant under U.S.S.G. § 3B1.2. Fourth, he argues that Defense Counsel induced him to accept responsibility at sentencing for a quantity of drugs not agreed to in the plea

5

agreement. In response, the Government argues that each claim is without merit and that all are procedurally defaulted.

### A. Mr. DeLeon-Baltazar's claims are not procedurally defaulted.

The Court will first address the threshold issue of procedural default. The Government argues that each of Mr. DeLeon-Baltazar's claims are procedurally defaulted because none was raised on direct appeal. (ECF No. 221, PAGEID # 915.) Nevertheless, the Government also requests that the Court sidestep this threshold issue for efficiency's sake, explaining that resolution of the default issue would require an evidentiary hearing on whether Mr. DeLeon-Baltazar's lack of appeal can be excused for cause and prejudice. (*Id.*)

Generally, failure to raise a claim on direct appeal results in procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998). Procedural default may be excused if the petitioner can show either actual innocence or sufficient cause and prejudice regarding his failure to appeal. *Id.* at 622. However, ineffective-assistance-of-counsel claims arising out of federal prosecutions are not subject to procedural default. "An ineffective-assistance-of counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Thus, regardless of whether Mr. DeLeon-Baltazar was at fault for his lack of appeal, none of the claims raised in his petition is subject to procedural default.

### B. Mr. DeLeon-Baltazar received constitutionally sufficient representation throughout trial court proceedings.

A defendant can succeed on a § 2255 Motion by demonstrating he received constitutionally deficient representation at trial. However, defendants alleging ineffective assistance of counsel bear "a heavy burden of proof." *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005). Under the *Strickland* standard for ineffective assistance of counsel, the defendant must show two things. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, "that the attorney's performance fell below 'prevailing professional norms.'" *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). On this performance prong, the Court must "'indulge a strong presumption' that counsel's conduct was reasonable and might be considered sound trial strategy." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (quoting *Strickland,* at 689). "Judicial scrutiny of a counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* (cleaned up).

Second, the defendant must show "that the attorney's poor performance prejudiced the defendant's case." *Monea,* at 419. This is a high bar to clear. To succeed on the prejudice prong, the defendant must demonstrate that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)). There are "[n]o particular set of detailed rules" that courts can

7

compare with counsel's conduct to determine whether their representation fell below a minimum standard. *Strickland*, 466 U.S. at 688–89. Rather, courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case. . .." *Id.* at 690.

> **1. Defense Counsel's decisions not to challenge the strength of the Government's evidence or the Court's subject matter jurisdiction were reasonable.**

Mr. DeLeon-Baltazar first argues that his attorneys were constitutionally deficient in failing to raise two allegedly dispositive arguments throughout his prosecution.

***Strength of the Evidence***. He first contends that Defense Counsel should have challenged the strength of the Government's case against him. He believes that the Government's only inculpatory evidence was "phone calls not directly implicating him with the conspiracy as charged," making his acquittal at trial a foregone conclusion. (ECF No. 202, PAGEID # 714.) This belief is puzzling given that the Government's strongest evidence against Mr. DeLeon-Baltazar is his own confession. When speaking to case agents with the assistance of an interpreter, Defendant outlined his role in and knowledge of the conspiracy with great detail. (*See* Sealed Report of Interview, ECF No. 224.) Given the compelling evidence of Mr. DeLeon-Baltazar's guilt in combination with the steep penalties he would face if convicted at trial, Defense Counsel's decision to advise Mr. DeLeon-Baltazar to accept the plea agreement rather than risk unsuccessfully challenging the Government's case at trial was a sound strategic decision.

8

***Subject Matter Jurisdiction***. Mr. DeLeon-Baltazar next argues that his attorneys should have challenged the Court's subject matter jurisdiction over his extraterritorial conduct. (ECF No. 202, PAGEID # 715.) A motion to dismiss for lack of jurisdiction can be made at any time during criminal proceedings. Fed. R. Crim. P. 12(b)(2). Even so, Rule 3.1 of the Ohio Rules of Professional Conduct requires that attorneys refrain from presenting frivolous or bad faith arguments. So, to determine whether Defense Counsel's decision not to challenge the Court's jurisdiction was unreasonable, the Court will examine whether Defense Counsel had a sound legal basis for doing so.

> It is a basic premise of our legal system that, in general, United States law governs domestically but does not rule the world. This principle finds expression in a canon of statutory construction known as the presumption against extraterritoriality: Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application. The question is not whether we think Congress would have wanted a statute to apply to foreign conduct if it had thought of the situation before the court, but whether Congress has affirmatively and unmistakably instructed that the statute will do so.

*RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335, 136 S. Ct. 2090 (2016) (internal quotations and citations omitted). Mr. DeLeon-Baltazar was indicted for, and ultimately convicted of, conspiring to distribute cocaine with knowledge or reasonable cause to believe it would be imported into the United States in violation of 21 U.S.C. § 959(a). In that statute, Congress was unequivocal:

> This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States.

21 U.S.C. § 959(d) (effective December 12, 2017). It is therefore unsurprising that every federal circuit court presented with the question of whether § 959 reaches beyond the United States has answered in the affirmative. *United States v. Epskamp*, 832 F.3d 154, 166 (2d Cir. 2016); *United States v. Mohammad-Omar*, 323 F. App'x 259, 261 (4th Cir. 2009); *United States v. Rojas*, 812 F.3d 382, 393 (5th Cir. 2016); *United States v. Paktipatt*, 168 F.3d 503 (9th Cir. 1999) (table) (citing *United States v. Davis*, 905 F.2d 245, 248 (9th Cir.1990)); *United States v. Sanchez*, 606 F. App'x 971, 974 (11th Cir. 2015); *United States v. Oral George Thompson*, 921 F.3d 263, 266 (D.C. Cir. 2019); *see also United States v. Hayes*, 653 F.2d 8, 15 (1st Cir. 1981) (distinguishing § 959's clear extraterritorial application with a different statute at issue).

Given the state of the law, Defense Counsel had no good-faith basis on which they could have challenged the Court's jurisdiction over Mr. DeLeon-Baltazar's extraterritorial conduct aimed at the United States. Even assuming the opposite, there is no reasonable probability that any motion to dismiss the indictment for lack of jurisdiction would have been successful. As such, neither prong of the *Strickland* standard is met.

### 2. Defense Counsel took necessary steps to ensure Mr. DeLeon-Baltazar pleaded knowingly and voluntarily.

Mr. DeLeon-Baltazar next argues that Defense Counsel was constitutionally deficient in allowing him to enter an unknowing and involuntary guilty plea. (ECF No. 202, PAGEID # 711.) However, the facts that Mr. DeLeon-Baltazar alleges in support of this argument imply that it was his underlying criminal conduct rather

10

than his guilty plea that was involuntary. (*Id.*) The Court will address both possible versions of his argument.

***Knowing and Voluntary.*** To pass constitutional muster, a guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160 (1970). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004). Review of the evidence and the record shows that Defense Counsel took every reasonable step to ensure that Defendant entered his guilty plea with a full understanding of the nature of his offense, the direct consequences of that plea, and the alternatives he could face at trial:

- On December 7, 2020, Defense Counsel attended a 4.3-hour meeting with the Government, Mr. DeLeon-Baltazar, and a Spanish interpreter to discuss the plea agreement and the evidence the Government would present at trial. (Menashe Affidavit, ECF No. 221-1, ¶ 16.) Prior to the December 7, 2020 Meeting, Defendant was provided with translated copies of the plea agreement and statement of facts. (*Id.*)

- On December 18, 2020, the Court held a *Lafler* Hearing with the Government, Defense Counsel, Defendant, and a Spanish interpreter. (Minute Entry, ECF No. 141) During that hearing, Defendant was again informed of the evidence that would be submitted at trial and the terms of the plea agreement. Attorney Menashe represented that she "talked extensively about the plea agreement" with Defendant (*Lafler* Hearing Transcript, ECF No. 211, 5:20–6:1.) She had explained to him that, if he were convicted at trial, he could expect a guideline range of 235 to 293 months but, if he were to accept the plea agreement, potential outcomes were 135 to 210 months with the safety valve and 168 to 210 months without the safety valve. (*Id.* at 11:20–25, 13:20–23.)

11

- After receiving Defendant's letter that he would like to accept the Government's previous offer, Defense Counsel re-engaged the Government in plea negotiations. (Menashe Affidavit, ECF No. 221-1, ¶ 20.) Those negotiations resulted in the Government's offer of an amended plea agreement, which was more favorable than its prior offer and included a potential outcome between 120 to 168 months of incarceration. (*Id.* at ¶ 24; Signed Plea Agreement, ECF No. 180.)

- Prior to the Change of Plea Hearing, Defense Counsel again met with the Government, Mr. DeLeon-Baltazar, and a Spanish interpreter to discuss the Government's evidence and the terms of the new plea offer. (Menashe Affidavit, ¶ 22.) Defendant then agreed to plead guilty. (*Id.* at ¶ 24.)

- At the Change of Plea Hearing, Defendant (with the aid of an interpreter) affirmed that he read and carefully reviewed every part of the amended plea agreement with Defense Counsel (Change of Plea Hearing Transcript, ECF No. 213, 4:13–19) and that he understood the terms of the agreement (*Id.* at 9:8–9.)

Far from falling below prevailing professional norms, this conduct is a model of conscientious advocacy.

***Duress Defense.*** Mr. DeLeon-Baltazar alleges that he told Defense Counsel that he was coerced by Guatemalan officials, that his children were threatened, and that he was forced to participate in the underlying conspiracy. (ECF No. 202, PAGEID # 711.) The Court construes this as an argument that Defense Counsel was deficient in advising him to take a guilty plea rather than proceeding to trial on a duress theory.

To state a prima facie case of duress, a defendant must offer some evidence in support of each of the following five elements:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

12

> (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
> (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;
> (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005). In his statement to law enforcement, Defendant said that he participated in the drug trafficking conspiracy for multiple years and traveled outside of Guatemala (the location of his alleged coercers) multiple times. At no point during that conversation did he mention that he participated under duress. And, at sentencing, Defendant stated that he sent his children to the United States to protect them. (Sentencing Hearing Transcript, ECF No. 212, 11:21–22.) In view of these facts, it is unlikely that he would have been able to present credible evidence that he acted "under an unlawful and present, imminent, and impending threat," that he "had no reasonable, legal alternative to violating the law," or that he did not participate in the conspiracy "any longer than absolutely necessary." Under the circumstances, it was prudent and reasonable for Defense Counsel to advise Mr. DeLeon-Baltazar accept a guilty plea rather than proceeding to trial on such a dubious strategy. His second argument fails.

### 3. Defense Counsel made reasonable strategic decisions during plea negotiations.

Defendant next argues that Defense Counsel was deficient by failing to stipulate that he qualified for the safety valve and by failing to argue that he was a

13

minimal or minor participant in the conspiracy. (ECF No. 202, PAGEID # 714.) The plea agreement signed by Mr. DeLeon-Baltazar left open whether the safety valve applied and precluded him from arguing that he was a minimal or minor participant at sentencing. (ECF No. 180, ¶¶ 8(d)–(e).) Thus, the Court construes this as an argument that Defense Counsel was ineffective in failing to negotiate for a more favorable plea agreement.

"A defendant challenging his attorney's conduct during plea bargaining 'must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence.'" *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (quoting *United States v. Cieslowski,* 410 F.3d 353, 358 (7th Cir.2005)). "'He must also show that his lawyer's deficiency was a decisive factor in his decision to plead guilty.'" *Id.* (quoting *Cieslowski,* 410 F.3d at 358–39). An alleged deficiency in plea negotiations is not prejudicial unless there is evidence the Government would have entertained another more beneficial agreement. *United States v. Jones*, No. 5:10-CR-78, 2015 WL 2342867, at *9 (E.D. Ky. May 14, 2015); *Williams v. United States*, No. 1:05–CR270, 2008 WL 59979, at *2 (W.D. Mich. Jan. 3, 2008).

***Safety Valve Reduction.*** Mr. DeLeon-Baltazar was granted a safety valve reduction at sentencing, foreclosing any ineffective-assistance-of-counsel claim premised on that reduction. (Sentencing Hearing Transcript, ECF No. 212, 5:23–25; Presentence Investigation Report, ECF No. 185, ¶ 31.)

*Minimal or Minor Role Reduction.* Section 3B1.2 of the U.S.S.G. "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." *Id.* at Note 3(A). The roster of available adjustments includes an adjustment for minimal participation and a more modest adjustment for minor participation. *Id.* To qualify as a minimal participant, the Defendant must be "plainly among the least culpable of those involved in the conduct of a group." *Id.* at Note 4. "The defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." *Id.* A defendant whose role could not be described as minimal, but who is still less culpable than most other participants is a minor participant. *Id.* at Note 5. Applying a minimal or minor role adjustment is a "heavily" fact-based determination and the sentencing court, "is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted." *Id.* at Note 3(C); *see also United States v. Bartholomew,* 310 F.3d 912, 924 (6th Cir. 2002).

There is no evidence or allegation that Defense Counsel failed to learn the facts of the case. To the contrary, the Government submits evidence that Defense Counsel spent close to 200 hours working on this case, thirty of which were spent meeting with the Defendant. Given her experience and her understanding of the case and of Defendant's admission to law enforcement, Mr. DeLeon-Baltazar's lead attorney stated that: "The evidence in this case did not support, in any way, that the Client was a minor participant." (Menashe Affidavit, ECF No. 22-1, ¶¶ 32–34).

15

Moreover, there is no evidence that the Government would have entertained negotiations for an agreement permitting a § 3B1.2 role reduction. Quite the opposite. Both plea agreements offered in this case precluded Mr. DeLeon-Baltazar from requesting even a minor participant role reduction. (*Lafler* Hearing Transcript, ECF No. 211, 9:14–18; Signed Plea Agreement, ECF No. 180, ¶ 8(d).)

Thus, the plea agreement negotiated by Defense Counsel does not give rise to an ineffective-assistance-of-counsel claim.

> **4. At sentencing, trial counsel reasonably decided not to raise arguments that conflicted with the record and the plea agreement.**

Finally, Defendant claims that Defense Counsel was deficient at sentencing for not arguing for a minor role reduction and for inducing him to accept responsibility for drug quantities not outlined in the plea agreement. (ECF No. 202, PAGEID # 711–12.)

***Minor Participant.*** Mr. DeLeon-Baltazar's plea agreement stated that he was not a minor participant in the conspiracy, precluding any argument that he was eligible for a 3B1.2 role reduction. Thus, Defense Counsel's decision not to raise such an argument at sentencing was neither unreasonable nor prejudicial.

***Drug Quantity.*** The plea agreement stated that Mr. DeLeon-Baltazar had a base offense level of 38 based on "450 kilograms or more of cocaine." (ECF No. 180, ¶ 8(c) (emphasis added).) At sentencing, the Court accepted the guideline calculation outlined in the presentence investigation report, which calculated a base offense level of 38 based on 880 kilograms of cocaine. (ECF No. 185, ¶ 30.) Even

16

assuming that Defense Counsel could have raised a good faith objection to that drug quantity, failure to do so had no impact on his base offense level and therefore caused no prejudice at sentencing.

Accordingly, Mr. DeLeon-Baltazar's final ineffective-assistance-of-counsel claim fails.

IV. **CONCLUSION**

For the reasons stated herein, the Motion to Vacate is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**